IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ADAMS | : | CIVIL ACTION |
|     Petitioner | : | |
|   v. | : | |
| | : | |
| RAYMOND LAWLER, et al. | : | |
|     Respondents | : | No. 08-3134 |

**MEMORANDUM**

LOWELL A. REED, JR., Sr. J.                                                                                              September 15, 2009

      Presently before this court is the pro se petition for writ of habeas corpus (Doc. No. 3) filed by petitioner Richard Adams ("Adams"), the response thereto (Doc. No. 11), and Adams' Reply (Doc. No. 18). Also before the court is Adams' motion for a stay of his habeas corpus petition. (Doc. No. 18). For the reasons set forth below, Adams' habeas corpus petition and his motion to stay will be denied.

**PROCEDURAL AND FACTUAL HISTORY:**

      On May 23, 2001, Omari Gadson ("Gadson") and Adams argued over a bicycle while in front of the home of Adams' mother. (N.T. 6/9/03, 116-118).[1] Commonwealth witness Richard Upshur testified that Adams seemed agitated after the argument and that he waved Upshur off when he told Adams that he should "let it go." (N.T. 6/9/03, 122-123). Adams went inside his mother's house and came out a minute or so later. (N.T. 6/9/03, 121-124). Gadson drove up in a car and got out. (N.T. 6/9/03, 124-125). By this

---

    [1] References are to the transcript of the bench trial in the Court of Common Pleas of Philadelphia commencing June 9, 2003.

time, a group of people had gathered. (N.T. 6/9/03, 124-125). Gadson asked a friend of Adams, "[w]hy your boy have to talk to me like that[?]" (N.T. 6/9/03, 126). Adams stepped off the curb towards Gadson who was standing with his arms on the roof of the car. (N.T. 6/9/03, 125-127). When Adams' younger brother, Michael, tried to intervene, Adams punched him and told him to get out of the way. (N.T. 6/9/03, 126). Then Adams pulled a gun out of his waist band and shot Gadson. (N.T. 6/9/03, 127-128). Upshur testified that after Gadson fell, Adams stepped around the car door and shot him again before running away. (N.T. 6/9/03, 130-131). Upshur called the police. (N.T. 6/9/03, 131). Gadson was subsequently pronounced dead at Hahnemann Hospital. (N.T. 6/9/03, 87). An autopsy showed that he had sustained gunshot wounds to his right side and that the bullets had penetrated his kidney, liver, lungs and aorta. (N.T. 6/9/03, 89-90).

On July 24, 2001, Adams was arrested and confessed to killing Gadson in self-defense. At his bench trial, Adams attempted to establish an alibi defense by claiming that he was not present when the victim was shot because he had gone "down North Philly to go get some weed." (N.T. 6/10/03, at 32). Adams was convicted of first degree murder, carrying firearms without a license, carrying firearms on public streets, and possessing instruments of crime. He was sentenced to life imprisonment for the murder conviction, and 3 terms of 2½ to 5 years imprisonment for each of his remaining convictions, to be served concurrent to each other, but consecutive to the life sentence.

Adams filed a direct appeal challenging the weight and sufficiency of the evidence

supporting his conviction. On April 15, 2004, the Pennsylvania Superior Court affirmed the judgment of sentence. Commonwealth v. Adams, 2137 EDA 2003 (Pa. Super. April 15, 2004) (unpublished memorandum), 852 A.2d 1242 (Pa. Super. 2004), attached as Ex. "B" to Response to Petition for Writ of Habeas Corpus (Doc. No. 11; hereinafter "Response"). Adams did not file a petition for allowance of appeal in the Pennsylvania Supreme Court.

On March 16, 2005, Adams filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq. The PCRA court appointed counsel who filed an amended PCRA petition alleging ineffective assistance of trial counsel for failing to meet or strategize with Adams before trial. Following an evidentiary hearing, the PCRA court dismissed Adams' petition. On July 13, 2007, the Superior Court affirmed the dismissal of Adams' PCRA petition. Commonwealth v. Adams, 2332 EDA 2006 (Pa. Super. July 13, 2007) (unpublished memorandum). Adams' petition for allowance of appeal in the Pennsylvania Supreme Court was denied on April 8, 2008. Commonwealth v. Adams, No. 424 EAL 2007 (Pa. April 8, 2008).

On May 16, 2008,[2] Adams filed a petition for a federal writ of habeas corpus in the Middle District of Pennsylvania. Because Adams was attacking the conviction obtained

---

[2]This court will presume that Adams' petition was given to prison authorities on the date on which it was signed, May 16, 2008, and his petition will be deemed filed as of that date. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988) (a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court).

against him in the Philadelphia Court of Common Pleas, which is located in the Eastern District of Pennsylvania, his case was transferred to this Court on May 29, 2008. On August 12, 2008, Adams was directed to complete the Eastern District's "current standard form of petition as directed by Local Civil Rule 9.3(b) and Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts." See Doc. No. 2. On August 28, 2008, Adams filed the instant habeas petition claiming:[3]

>   1) ineffective assistance of counsel for failing to properly investigate, interview and call possible witnesses;
>
>   2) ineffective assistance of counsel for failing to properly cross-examine witnesses;[4]
>
>   3) his conviction was obtained by the unconstitutional use of perjured and biased testimony; and
>
>   4) his conviction was obtained by the unconstitutional use of a coerced confession.

Respondents have filed a response asserting that Adams' petition is time-barred and as well he is not entitled to federal habeas relief because his claims are procedurally

---

[3] When compared to the petition which he had previously filed in the Middle District of Pennsylvania, Adams' habeas petition in this court added new claims and abandoned a claim regarding the weight and sufficiency of the evidence against him. I note, however, that the petition filed in this court governs. See Local Civil Rule 9.3 ("All petitions for writ of habeas corpus. . . shall be filed on forms provided by the Court . . .[o]rdinarily, the Court will consider only those matters which are set forth on the forms provided by the Court"); see also Rule 2(d) of the Rules Governing Section 2254 Cases (a habeas "petition must substantially follow . . . a form prescribed by a local district-court rule").

[4] Claims one and two were combined as one claim in Adams' habeas petition; however, they set forth distinct legal issues. As such, I have presented them as two separate claims.

defaulted and/or meritless.[5]

**DISCUSSION:**

**1.     Claim One (1): Ineffective Assistance of Counsel**

In his first claim, Adams contends that trial counsel was ineffective for failing to properly investigate, interview, and call possible witnesses. Adams fails to provide specific information regarding said "possible witnesses" in his habeas petition. However, in the state courts, Adams alleged that he had not been given the opportunity to "actively participate in his defense" and that if given the opportunity, he would have provided counsel with information regarding his mother, Elise Adams, who would have provided alibi testimony at trial. See Mem. of Law in Supp. of Pet'r Amended Pet. for Relief under the Post-Conviction Relief Act, at 4-5 (unnumbered pages). I will thus review this properly exhausted version of Adams' claim for habeas relief.

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the

---

[5] Respondents argued that Adams' petition was time-barred under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). This defense was based on the faulty assumption that Adams' habeas petition was filed on the date that Adams' petition was docketed in the Eastern District of Pennsylvania, July 2, 2008, rather than the date it was originally filed in the Middle District of Pennsylvania, on May 16, 2008. Because Adams' May 16, 2008, habeas petition was filed in a timely fashion before the federal statute of limitations expired on June 7, 2008, Respondents' argument must be dismissed.

5

Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000). In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)). The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of

such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "[A] court need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391. Thus, Adams is entitled to relief if the Pennsylvania courts' decision rejecting his claims of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law. Id.

As previously noted, Adams argues that trial counsel was ineffective for failing to investigate or call his mother, Elise Adams, regarding a possible alibi defense.[6] In

---

[6]Immediately before trial, Adams had requested his mother's testimony:

**[Defense counsel]:** [Adams] has indicated to me that there are certain witnesses that he wants brought down for his trial, and I told him I would bring that to Your Honor's attention and let him, at least, place their names on the record.

**Court:** Okay. And these witnesses are?

**[Adams]:** Elise Adams.

**[Defense Counsel]:** That is [Adams'] mother who is actually incarcerated at Muncy.

**Court:** And for what purpose? What would she bring to the trial?

**[Adams]:** A defense.

**Court:** No, I mean what evidence does she provide?

**[Adams]:** (No response).

**[Defense counsel]:** Judge, Miss Adams did give a statement shortly after the

denying this claim, the state court first stated that Adams had failed to provide the court with an affidavit indicating his mother's availability and willingness to cooperate with the defense, as required by Pennsylvania law.[7]  Commonwealth v. Adams, 2137 EDA 2003, at 8.  The state court also noted that the record indicated that if Ms. Adams had been called to testify at trial, she would have stated that she had heard a gunshot.  Id.  The state court reasoned that such testimony would not confirm whether Adams "was elsewhere or whether he acted in self-defense."  Id.  As such, the court concluded that Ms. Adams proposed testimony "would not have been beneficial to establish an alibi or to prove [Adams] killed [the victim] in self-defense."  Id.

I conclude that the state courts' determination of this issue was reasonable and not contrary to established law.  In her statement given to police on May 26, 2001, Ms.

---

>   incident.  She did not see the incident, but heard the gunshots outside.  I have
>   advised my client that I do not think that she should be called as a witness for us,
>   that [the] Commonwealth would be more inclined to call her as a witness . . .

(N.T. 6/9/03, at 3-4).

[7]The court cited Commonwealth v. O'Bidos, 849 A.2d 243, 250 (Pa. Super. 2004), which states that a petitioner must establish the following factors to prove trial counsel's ineffective assistance in failing to call an alibi witness:
>   (1) the witness existed; (2) the witness was available; (3) counsel was informed of
>   the existence of the witness or counsel should otherwise have known of him; (4)
>   the witness was prepared to cooperate and testify for Appellant at trial; and (5) the
>   absence of the testimony prejudiced Appellant so as to deny him a fair trial.  A
>   defendant must establish prejudice by demonstrating that he was denied a fair trial
>   because of the absence of the testimony of the proposed witness.  Further,
>   ineffectiveness for failing to call a witness will not be found where a defendant
>   fails to provide affidavits from the alleged witnesses indicating availability and
>   willingness to cooperate with the defense.

Adams noted that she was inside her house when she heard two gunshots outside and that she had seen her son carrying a gun earlier in the day. See Elise Adams' Statement, attached as Ex. "G" to Response at 2, 4. As the state court determined, such a statement would not have supported the self-defense theory forwarded by Adams' counsel because Ms. Adams did not actually observe the shooting. Moreover, Ms. Adams did not make any statements which would have established an alibi for Adams.[8] Thus, as Ms. Adams' trial testimony would not have bolstered the defense, trial counsel was not ineffective for failing to call her to testify. Because the state court decision is consistent with Strickland, I conclude that trial counsel was not ineffective for failing to call Elise Adams to testify at trial.

**2.      Claims Two (2), Three (3) and Four (4): Exhaustion and Procedural Default**

Claims two, three and four have never been presented to the state courts and are, therefore, unexhausted.[9] A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b). "The exhaustion

---

[8] I note that defense counsel testified at Adams' PCRA hearing that counsel and Adams had agreed to a self-defense theory in the case because it was consistent with both Adams' statement to police as well as his brother's statement. (N.T. 7/26/06, 6-7); see Richard Adams' Statement, attached as Ex. "E" to Response; see Michael Adams' Statement, attached as Ex. "F" to Response.

[9] In his second claim, Adams contends that counsel was ineffective for failing to properly cross-examine witnesses; his third claim alleges that his conviction was obtained by the unconstitutional use of perjured and biased testimony; and his fourth claim alleges that his conviction was obtained by the unconstitutional use of a coerced confession.

doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)). A petitioner typically exhausts his federal claims by fairly presenting each claim at each stage of the state's established review process. Villot v. Varner, 373 F.3d 327, 337 (3d Cir. 2004). The habeas corpus petitioner has the burden of proving exhaustion of all available state remedies. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

I will, however, excuse exhaustion pursuant to 28 U.S.C. § 2254(b)(1), because a return to state court would be futile due to "an absence of available State corrective process." Lines, 208 F.3d at 162. The only way in which Adams could present these claims in the state court at this time is by filing a second PCRA petition. See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of limitations.[10]

---

[10]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)). For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3). Adams' conviction became final in 2004.

Although exhaustion is excused, Adams is considered to have procedurally defaulted his claims because state procedural rules bar him from seeking further relief in state courts.  Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).  The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review.  Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002).  The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Werts v. Vaughn, 228 F.3d 178, 192-193 (3d Cir. 2000) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 193 (citing Carrier, 477 U.S. at 494).  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of

justice. Coleman, 501 U.S. at 748. In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496); see Glass v. Vaughn, 65 F.3d 13, 16-17 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996) (assuming that the Schlup miscarriage of justice/actual innocence standard applied to noncapital petitioner arguing eligibility for lesser degree of guilt). To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327; see also Glass, 65 F.3d at 16.

Adams has not even attempted to provide this court with an explanation for his failure to properly present these claims to the state courts.[11] As a result, he has not shown

---

[11] To the extent that Adams would argue that his default is due to counsel's failure to present these claims on direct appeal, such a claim must fail. A claim of ineffective assistance of counsel constitutes "cause" for procedural default only if the claim was presented to the state courts independently prior to its use to establish cause. Edwards v. Carpenter, 529 U.S. 446, 452 (2000) (citing Carrier, 477 U.S. at 488-89). In this case, the state court never entertained the claim that counsel was ineffective for failing to present these claims on direct appeal. Consequently, because a claim of ineffective assistance of appellate counsel was not presented to the state courts, it cannot constitute "cause" for his default. Moreover, the Supreme Court has determined that any attorney error that has led to the default of a petitioner's claims in a collateral or discretionary proceeding in state court cannot constitute cause to excuse his default in a federal habeas petition. See Coleman, 501 U.S. at 757 (any attorney error that led to the default of petitioner's claims in a collateral or discretionary proceeding in state court cannot constitute cause to excuse his default in federal habeas petition); see also Pennsylvania v. Finley, 481 U.S. 551, 558 (1987) (Constitution does not dictate standard for attorney effectiveness in post-conviction collateral attack).

cause to excuse his procedural default.[12]  Carrier, 477 U.S. at 488.  Moreover, because Adams makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice will result if his claims are not reviewed.  Coleman, 501 U.S. at 748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496); see Glass, 65 F.3d at 16-17.  Consequently, federal review of these claims is foreclosed.

### 3.      Motion to Stay Habeas Proceeding

Finally, Adams has requested that this court stay proceedings in his federal habeas petition in order to return to state court to exhaust "previously presented" claims as well as unspecified claims that he has recently discovered through review of his trial transcripts.[13]  In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court approved a stay-and-abeyance procedure, under which a district court may stay a timely habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  Id. at 275.  A stay-and-abeyance is available in limited circumstances when the following three-part test is met: (1) there is "good cause" for the

---

[12]Because no cause has been demonstrated, the court need not address the prejudice requirement.  Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

[13]Adams initially requested a stay simply by writing "stay and abey federal habeas petition/protective petition pursuant to Rhines v. Weber" on the top of his habeas form.  See Doc. No. 1.  Adams reiterated his request for a stay in his Reply Brief wherein he requests a "protected petition under Rhines, [so] that he will be able to exhaust all of his previously presented claims as well as the claims that he just found in his trial notes."  See Doc. No. 18, at 2.  On April 17, 2009, this court forwarded Adams a copy of his trial transcript upon his request.  See Doc. Nos. 16, 17.

14

petitioner's failure to exhaust his claims first in state court; (2) the unexhausted claims are "potentially meritorious;" and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. Id. at 277-78.

The Rhines Court established the stay-and-abeyance procedure in order to confront "the problem of a 'mixed' petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not." Id. at 271; see Rose v. Lundy, 455 U.S. 509, 522 (1982) (a mixed habeas petition consists of both exhausted and unexhausted claims). In the instant case, Adams has not presented the court with a "mixed" petition, but rather presents a petition with an exhausted claim and three procedurally defaulted claims. See Wenger v. Frank, 266 F.3d 218, 227-28 (3d Cir. 2001) ("[a] petition containing unexhausted but procedurally barred claims in addition to exhausted claims, is not a mixed petition requiring dismissal under Rose"). Notwithstanding, Adams requests a stay in order to present "all of his previously presented claims" as well as new claims "found in his trial notes" to the state courts.

The vexing problem in trying to rule upon Adam's motion to stay is the fact that Adams has failed to specify what claims he intends to present to the state court.[14] Thus, this court is unaware of the claims which would provide the basis for staying his petition

---

[14]Indeed, I note that as of August 31, 2009, Respondents have confirmed that Adams does not have an appeal pending in any state court which would indicate an attempt to exhaust his claims in the state system.

15

in this court. To the extent that Adams wishes to present entirely new claims, he would need to be allowed by the court to amend his federal habeas petition.[15] See Fed.R.Civ.P. 15(a). However, I find that any such amendment would be futile because the claims would be time-barred. See 28 U.S.C. § 2244(d)(1). The Third Circuit has held that in the context of both habeas and non-habeas civil proceedings, a party may not allege an entirely new claim by amendment after the expiration of the statute of limitations. See United States v. Thomas, 221 F.3d 430, 435-36 (3d Cir. 2000); see also generally Duffus, 174 F.3d 333 (noting that petitioner's motion to amend habeas petition under Rule 15 was governed by the "special situation" created by the AEDPA's time-bar and reasoning that allowance of a new claim, after filing of responsive pleading, would frustrate the intent of Congress that claims under § 2255 be advanced within 1 year after a judgment of conviction becomes final). In the instant case, the applicable starting point for the statute of limitations is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000). Adams' conviction became final when his direct appeal ended on May 15, 2004. See Pa.R.A.P. 1113(a) (a petition for allowance of appeal in the

---

[15]The Federal Rules of Civil Procedure apply to motions to amend habeas corpus motions. See United States v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999), cert. denied, 528 U.S. 866 (1999) (citing Riley v. Taylor, 62 F.3d 86, 89 (3d Cir. 1995)). Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." See Foman v. Petitioner, 371 U.S. 178, 182 (1962). Such leave should be denied only in limited circumstances, as for example, where amendment is sought in bad faith, where it would unduly prejudice the opposing party or where the amendment would be futile.

Pennsylvania Supreme Court is to be filed within thirty (30) days of the entry of the order of the Superior Court).  Consequently, Adams would normally have had until May 15, 2005, to timely file his § 2254 petition.

The statute of limitations also provides, however, that the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).  On March 16, 2005 – 305 days into his one (1) year grace period – Adams filed a PCRA petition.  Because this petition was filed in accordance with Pennsylvania's procedural requirements, it is considered a "properly filed application" for post-conviction relief, thereby tolling the one (1) year limitation period.  See 28 U.S.C. § 2254(d)(2) (the time during which a "properly filed application" for state post-conviction review is pending shall not be counted toward the one (1) year period of limitation); Artuz v. Bennett, 531 U.S. 4 (2000).  Such a petition is considered "pending" within the meaning of § 2244(d)(2) during the time a state prisoner is pursuing his state post-conviction remedies, including the time for seeking discretionary review of any court decisions whether or not such review was actually sought.  See Swartz, 204 F.3d at 424.  Adams' petition was thus pending until April 8, 2008, when the Pennsylvania Supreme Court denied his petition for allowance of appeal.  At this time, the one (1) year grace period began to run again and Adams had 60 days, or until June 7, 2008, to file a timely § 2254 petition, or to amend that petition to assert new claims.

Adams submitted his timely petition for filing on May 16, 2008.  However, he did not file a motion to amend his petition before the statute of limitations expired on June 7, 2008.  Because any attempt to assert new claims is precluded by the federal statute of limitations, I conclude that a motion to amend on this basis would result in his additional claims being dismissed as time-barred.[16]  Thus, this court could not grant a motion to stay Adams' habeas petition on the basis of new claims added to his petition.

To the extent that Adams seeks a stay to return to state court for review of the three unexhausted claims which he presented in his original petition, I note that, for the reasons previously stated, supra, Adams would be precluded from state court review of these claims.  As such, these claims are not "potentially meritorious."  Rhines, 544 U.S. at 277-278.  Accordingly, a motion to stay in order to obtain state court review of these claims must be denied.

An appropriate order follows.

---

[16] I note that Adams does not allege any of the statutory exceptions for tolling the statute of limitations, 28 U.S.C. § 2244(d)(1)(B)-(D), or provide any basis for equitable tolling.  To the extent that Adams might allege that he did not have access to his transcripts, and thus, was unable to form the basis for the unspecified claims which he now wishes to assert before the state court, I find such an assertion, if made, would be unacceptably vague and general.  Adams completed a direct and collateral appeal in the state courts, both with the assistance of counsel.  It would be difficult to give credence to any assertion that he was deprived of the opportunity to present claims to the state court because he did not have the specific information found in his trial transcripts.  In light thereof, I find that any motion to appoint new counsel in order to assert new facts or claims in a motion to amend must be denied as well.